```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - X
                                         :
UNITED STATES OF AMERICA                 :
                                         :
      -v-                                :    S1 12 Cr. 844 (RWS)
                                         :
ERIC FERNANDEZ,                          :
   a/k/a "Calvo," and                    :
PABLO VENTURA-NIEVES,                    :
   a/k/a "Pablo Ventura,"                :
                                         :
                     Defendants.         :
                                         :
- - - - - - - - - - - - - - - - - - - - X
```

**MEMORANDUM IN SUPPORT OF GOVERNMENT'S MOTION PURSUANT TO TITLE 18, UNITED STATES CODE, SECTION 3145 FOR REVOCATION OF RELEASE ORDERS AS TO DEFENDANTS ERIC FERNANDEZ, A/K/A "CALVO," AND PABLO VENTURA-NIEVES, A/K/A "PABLO VENTURA"**

```
                              Preet Bharara
                              United States Attorney
                              Southern District of New York
                              One St. Andrew's Plaza
                              New York, New York 10007
```

Jessica R. Lonergan
Russell Capone

Assistant United States Attorneys
    -Of Counsel-

**Table of Contents**

FACTS............................................................... 1
  A.  Procedural Background....................................... 1
  B.  Factual Background.......................................... 2
ARGUMENT............................................................ 5
  A.  The Court Should Order That Eric Fernandez and Pablo
Ventura-Nieves Be Detained ..................................... 5
    a.  Eric Fernandez ......................................... 6
    b.  Pablo Ventura-Nieves ................................... 9
CONCLUSION......................................................... 12

The Government respectfully submits this memorandum of law in support of its Motion Pursuant to Title 18, United States Code, Section 3145 For Revocation of Release Orders as to Defendants Eric Fernandez, a/k/a "Calvo," and Pablo Ventura-Nieves, a/k/a "Pablo Ventura."

## FACTS

### A. Procedural Background

On December 18, 2012, Fernandez and Ventura-Nieves were arrested in the District of Puerto Rico in connection with Superseding Indictment S1 12 Cr. 844 (RWS) (the "Indictment"). The Indictment charges the defendants and others with conspiracy to violate the narcotics laws of the United States, in violation of Title 21, United States Code, Sections 846 and 841(b)(1)(A).

On or about December 21, 2012, a detention hearing was held in the District of Puerto Rico with respect to Fernandez, Ventura-Nieves, and others. After hearing argument, United States Magistrate Judge Bruce J. McGiverin ordered Fernandez's and Ventura-Nieves's release on bail. Fernandez and Ventura-Nieves were each released on a $200,000 bond to be secured by cash or property, as well as home detention with electronic monitoring. The orders pursuant to which Fernandez and Ventura-Nieves were released will be referred to herein as the "Release Orders."

The same day, the Government sent a letter to the Honorable Andrew L. Carter, United States District Judge for the Southern District of New York, sitting on Part I duty, copied to the attorneys for the defendants. In its letter, the Government asked Judge Carter to stay the Release Orders pending the instant motion for revocation. Judge Carter entered Orders staying the Release Orders pending the instant motion.

**B. Factual Background**

The Indictment charges 11 defendants in connection with a multi-year, international conspiracy to distribute hundreds of kilograms of cocaine from locations in South and Central America to the Southern District of New York and other locations within the United States. Three defendants—Eduardo Andino, Omar Aponte, and Wilfredo Aquino, a/k/a "Feito," a/k/a "Feo"—were arrested on or about August 1, 2012 in connection with a seizure of approximately 400 kilograms of cocaine principally from a warehouse in Bayonne, New Jersey (the "Warehouse"). The Warehouse was used as a storage and staging location for the cocaine, which was to be divided up and distributed to multiple customers in the New York/New Jersey area. Customers were instructed to park in a parking lot near the Warehouse, from where the co-conspirators retrieved the customers' cars and drove to the cars to the Warehouse. At the Warehouse, the co-conspirators loaded cocaine into the

customers' cars, which they then returned to the parking lot. The purpose of this arrangement was to prevent the customers from learning the location of the Warehouse, where the co-conspirators stored large quantities of cocaine.

The cocaine seized on or about August 1, 2012 was packaged in hollowed-out bamboo flooring, which was used to conceal the cocaine during shipment. The packaging of the cocaine suggests that it was transported by ship. Furthermore, the investigation has revealed that the conspiracy includes a private pilot who delivers cocaine to the United States via airplane.

Defendant Ventura-Nieves was the lessee of the Warehouse as of August 1, 2012, the date of the 400-kilogram cocaine seizure. He also leased an apartment above the Warehouse; according to the owner of the Warehouse, Ventura-Nieves abandoned the apartment and the Warehouse after the August 1, 2012 seizure. In addition, Ventura-Nieves rented multiple cars used for the distribution of cocaine by the co-conspirators.

Ventura-Nieves's role in the transportation of narcotics is further supported by the fact that, as he reported to Pretrial Services, he works for a company known as "International Freight Consultants Corp.," which advertises on the internet its expertise in "Warehouse; Distribution;

3

Brokering; Logistics; Trucking; Consultants; Cold Storage; Exportation; Import; Shipping; Packing; Land Freight; Space Rental; Pallet Rental."  (See http://www.international freightpr.com/menu.html).  He also previously worked for two companies involved in customs clearance in Puerto Rico, and he had in his residence on the day of his arrest a card giving him access to customs-controlled areas at transportation locations in Puerto Rico.

Defendant Alfonso Castillo (who is not the subject of the instant motion) was to receive some portion of the 400 kilograms that were seized on August 1, 2012.  Pursuant to court-authorized wiretap orders, law enforcement intercepted telephone calls over cellular telephones used by Castillo in which he coordinated and attempted to coordinate additional deliveries of cocaine.  Defendant Eric Fernandez is a partner of Castillo's who was intercepted on scores of occasions over Castillo's phones, including a number of phone calls discussing cocaine shipments.  On one occasion, Fernandez supplied Castillo with the tracking number for a parcel, which parcel was ultimately seized by law enforcement pursuant to a search warrant and determined to contain approximately two kilograms of a white powdery substance believed to be cocaine.

4

**ARGUMENT**

**A. The Court Should Order That Eric Fernandez and Pablo Ventura-Nieves Be Detained**

Pursuant to Title 18, United States Code, Section 3142(e) and (f)(1), because this is a case brought under the Controlled Substances Act for which the maximum punishment is ten or more years, there is a rebuttable presumption that no condition or combination of conditions will reasonably assure the appearance of Fernandez and Ventura-Nieves and the safety of the community if they were released.  Further, in determining whether that burden has been overcome, the Court is to consider (i) the nature and circumstances of the offense; (ii) the weight of the evidence against the person; (iii) the history and characteristics of the person; and (iv) the nature and seriousness of the danger to any person or the community that would be posed by the person's release.  18 U.S.C. § 3142(g).  In this case, consideration of these factors makes clear that Fernandez and Ventura-Nieves cannot overcome the presumption that they be detained pending trial.

With respect to the nature and circumstances of the offense, Fernandez, Ventura-Nieves, and their co-defendants were involved in a conspiracy to distribute massive amounts of cocaine from international locations into the United States.  As noted above, on a *single* occasion in August 2012, nearly 400

kilograms were seized from the organization in New Jersey, packaged in hollowed-out bamboo flooring units. The investigation has revealed that the organization has transported large quantities of cocaine into the United States on previous occasions, making the quantity of narcotics at issue overwhelming.

Furthermore, the conspiracy involves multiple forms of transportation from locations abroad to the United States, including transportation by ship and by an airplane. One member of the conspiracy is a pilot who has access to a private airplane.

### a. Eric Fernandez

The case against Fernandez is overwhelming, weighing in favor of detention. The investigation involved numerous wiretaps, and Fernandez was intercepted participating in scores of long, detailed calls discussing narcotics trafficking. On one occasion, Fernandez sent a tracking number for a package to a co-conspirator. The package with that tracking number was seized by law enforcement and searched pursuant to a search warrant. Upon executing the warrant, the agents found approximately two kilograms of cocaine.

Moreover, Fernandez was observed on surveillance multiple times meeting with other members of the conspiracy. On

one occasion, Fernandez was stopped in a car in which he was travelling with another member of the conspiracy.

Fernandez's history and characteristics also militate in favor of detention. The investigation has revealed that Fernandez has used multiple deceptive techniques. Specifically, Fernandez changed his cellular telephone every few weeks, which is a common practice by narcotics traffickers to evade detection by law enforcement. One of the cars frequently driven by Fernandez possesses a secret compartment (or "trap"), of the type used by narcotics traffickers to hide narcotics and money.

Moreover, the investigation revealed that Fernandez was primarily based in Philadelphia for at least a few months in 2012. He was repeatedly surveilled during that time in Philadelphia, and individuals at a house searched pursuant to a search warrant on the day that Fernandez was arrested told law enforcement that it was Fernandez's house. Nonetheless, Fernandez reported to Pretrial Services that he has been living in Puerto Rico since 2006. Although Fernandez was arrested in Puerto Rico on December 18, 2012, law enforcement is aware that he had only recently traveled there from the continental United States. Fernandez also reported to Pretrial Services that he had traveled abroad twice in the last three years.

In addition, pursuant to a warrant, Fernandez's home in Philadelphia was searched concurrent with his arrest in

7

Puerto Rico.  Agents found, among other things, approximately $41,000 in cash.  Fernandez failed to report that money to Pretrial Services, despite reporting other assets and debts, which include between $8,000 and $10,000 a month in ostensibly legitimate income alone.  Accordingly, Fernandez has demonstrated a pattern of travel, along with possessing the means and incentive to flee.

The strength of the evidence combined with the penalties that Fernandez is facing provide him with a substantial incentive to fail to appear.  Because he has been charged with a violation of Section 846 and 841(b)(1)(A) of Title 21, Fernandez is facing a mandatory minimum of 10 years' imprisonment.  Further, his Guidelines range *based on the August 1, 2012 seizure alone* is substantially in excess of the mandatory minimum.  The likelihood that Fernandez will spend a very long time in prison makes him a very real flight risk and only strengthens the statutory presumption of detention in this case.

Finally, as to the fourth factor, Fernandez presents a real danger to the community.  He was a key member of an international narcotics trafficking organization involved in the importation and distribution of hundreds of kilograms of cocaine.  He was personally involved in coordinating the

8

delivery of cocaine to other members of the conspiracy—conduct that he could continue on bail if released pending trial.

### b. Pablo Ventura-Nieves

Ventura-Nieves was a critical member of the organization, who rented the Warehouse where much of the cocaine was stored in New Jersey as well as an apartment over the Warehouse from where he could monitor the inventory. He was also responsible for renting cars used to transport the divided-up cocaine to lower-level distributors. As noted above, Ventura-Nieves works for a company that advertises its expertise in, among other things, "Warehouse," "Distribution," "Exportation," "Import," and "Shipping."

The second factor—the weight of the evidence against the person—also militates in favor of detention. As noted above, Ventura-Nieves's name is on the lease of the Warehouse and is associated with multiple vehicles used in connection with the conspiracy. The day after the seizure, Ventura-Nieves abandoned the apartment above the Warehouse. In fact, the investigation has revealed that Ventura-Nieves was present on the night of the seizure, but escaped from the vicinity of the Warehouse before he could be discovered by law enforcement.

As with Fernandez, the strength of the evidence and the penalties that Ventura-Nieves is facing provide him with a substantial incentive to fail to appear. Ventura-Nieves is

9

facing a mandatory minimum of 10 years' imprisonment. Further, his Guidelines range *based on the August 1, 2012 seizure alone* is substantially in excess of the mandatory minimum. The likelihood that Ventura-Nieves will spend a very long time in prison makes him a very real flight risk and only strengthens the statutory presumption of detention in this case.

With respect to Ventura-Nieves's personal history and characteristics, the pretrial report completed upon his arrest in Puerto Rico makes clear that he has substantial connections to other districts and countries. While Ventura-Nieves's mother lives in the Southern District of New York, he himself is a resident of Puerto Rico. He has traveled repeatedly to the Dominican Republic. Additionally, he lived in Panama—a country from which co-conspirators have discussed importing cocaine—from 2001 to 2004.

Further, Ventura-Nieves's employment history (as set forth in the Pretrial Report) evidences his substantial familiarity with travel and shipping. As noted herein, Ventura-Nieves's current position is with a company involved in importing and exporting goods from Puerto Rico. He previously worked for six years at two companies at an airport in Puerto Rico named "RS Express" and "Caribe Express." RS Express is involved in "Customs Clearance and Trade Services," and Caribe Express is involved in "Customs clearance" and "Port-to-Port

delivery." (See www.rsexpress.com and www.caribeexpress.us.). In addition, on the day he was arrested, Ventura-Nieves had in his residence a card giving him access to customs-controlled areas at transportation locations in Puerto Rico.  That the defendant has spent a career in the shipping and customs industries should give the Court ample concern about the likelihood that he will appear in Court.

      Finally, the danger to the community posed by Ventura-Nieves's release on bail is evident based on the nature and circumstances of the charge against him, involving the importation, storage, and distribution of hundreds of kilograms of cocaine from locations abroad.  That Ventura-Nieves was a major player in a sophisticated international cocaine conspiracy demonstrates the danger he poses to the community were he to be released pending trial.

**CONCLUSION**

For the reasons set forth above, the Government submits that the Court should revoke the Release Orders and order that Ventura-Nieves and Fernandez be detained without bail pending trial.

Dated:     January 4, 2013
           New York, New York

                        Respectfully submitted,

                        PREET BHARARA
                        United States Attorney
                        Southern District of New York

By:   _____
      Jessica R. Lonergan
      Russell Capone
      Assistant United States Attorneys
      (212) 637-1038/2247