USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 6/5/2020

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

|   |   |
|---|---|
| United States of America, | |
| –v– | 12-CR-844-9 (AJN) |
| Eric Fernandez, | MEMORANDUM AND ORDER |
| Defendant. | |

ALISON J. NATHAN, District Judge:

Defendant Eric Fernandez, proceeding *pro se*, has moved for release compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A). For the reasons articulated below, the motion is denied.

**I.    BACKGROUND**

On March 5, 2014, the Defendant pled guilty to one count of participation from 2011 to 2012 in a narcotics conspiracy to distribute and possess with intent to distribute 5 kilograms or more of cocaine. The conspiracy in question was a highly sophisticated drug trafficking organization that worked to transport more than 1,000 kilograms of cocaine form Puerto Rico to New Jersey in less than one year. The Defendant owned a significant portion of the drugs in each shipment and also assisted with transporting the drugs in Puerto Rico. *See* PSR ¶ 20. The Defendant joined this narcotics conspiracy even though he had significant legitimate income from his employment. *Id.* ¶¶ 62-65. Despite a public raid of the organization in August 2012 that resulted in a seizure of over 300 kilograms of cocaine, the Defendant attempted to engage in a smaller shipment of cocaine a couple months later. *Id.* ¶ 26.

As part of the Defendant's plea agreement, he and the Government stipulated that he was responsible for over 150 kilograms of cocaine for purposes of his Guidelines calculation. When

the plea agreement was entered into, this quantity of cocaine would have resulted in a base offense level of 38. But because of intervening amendments to the Guidelines, the base offense level was lowered to 36 by the time the Defendant was sentenced. This ultimately resulted in a total offense level of 33 and a Guidelines range of 135 to 168 months. At the Defendant's sentencing the Government represented that if the Guidelines had been amended at the time of the plea, the Defendant would not have been offered anything below a base offense level of 38. Sentencing Tr. 15:24-16:4. Under the amended Guidelines, a base offense level of 38 is for narcotics trafficking of 450 kilograms or more of cocaine. The Government noted that at the time of the plea, the Guidelines did not go any higher than 150 kilograms.

At the Defendant's sentencing, Judge Sweet determined that a Guidelines sentence was appropriate because the Defendant's "role was significant."[1] Sentencing Tr. 19:17. However, due to the Defendant's family connections and personal background, Judge Sweet decided to give him a sentence at the low end of the Guidelines. Accordingly, he sentenced the Defendant to 135 months.

The Defendant, who is 51 years old, has now moved for compassionate release, and has proposed that the remainder of his sentenced be modified to home confinement. He suffers from hypertension and diabetes, and his motion cites the COVID-19 pandemic as the principal reason for why he should be released. As noted above the Defendant filed this motion *pro se*. The Court has afforded the Defendant the opportunity to seek the appointment of counsel should he financially qualify, but nearly three weeks have passed and he has yet to respond. *See* Dkt. No. 442. The Defendant is currently housed at the Fort Dix low security facility. His scheduled release date is October 24, 2024, and he is eligible for home confinement on April 29, 2024.

---

[1] This case was initially assigned to the late Hon. Robert W. Sweet and was subsequently transferred to the undersigned.

**II.     DISCUSSION**

"Federal courts are forbidden, as a general matter, to 'modify a term of imprisonment once it has been imposed,' 18 U.S.C. § 3582(c); but the rule of finality is subject to a few narrow exceptions." *Freeman v. United States*, 564 U.S. 522, 526 (2011).  Compassionate release is one of the limited exceptions enumerated in 18 U.S.C. § 3582(c).  Under the recently enacted First Step Act, a court may reduce a defendant's sentence if it finds that "extraordinary and compelling circumstances warrant such a reduction," and that "such a reduction is consistent with the applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A)(i).  The Court must also consider the "factors set forth in section 3553(a) to the extent that they are applicable." *Id.* § 3582(c)(1)(A).

Before filing a compassionate release motion, a defendant usually must satisfy the statute's administrative exhaustion requirement.  One avenue to doing so is if the Defendant "fully exhaust[s] all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion [for compassionate release] on the defendant's behalf." *Id.*  The other is if there is a "lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier" *Id.*  Here, the Defendant made a such a request on April 13, 2020, which was denied on May 15, 2020.  Despite the apparent lapse of 30 days, the Government nevertheless contends that the exhaustion requirement has not been met because the Defendant did not appeal the initial denial of his request by the BOP.  But even assuming that the Defendant satisfied the exhaustion requirement, his motion would still be denied on the merits.

Releasing the Defendant to home confinement would neither be "consistent with the applicable policy statements issued by the Sentencing Commission," 18 U.S.C. § 3582(c)(1)(A)(i), or supported by the "factors set forth in section 3553(a)," *id.* § 3582(c)(1)(A).

The Court turns first to the pertinent Sentencing Commission policy statements. Under the relevant guidelines provision and its commentary, a court may reduce a sentence for "extraordinary and compelling reasons," including where the defendant is "suffering from a serious physical or medical condition . . . that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover." U.S.S.G. § 1B1.13(1)(A) & cmt. n.1(A). It is undisputed that the Defendant's diabetes and hypertension place him at greater risk were he to contract COVID-19. And his continued incarceration increases the likelihood that will happen. *See United States v. Scparta*, No. 18-cr-578, 2020 U.S. Dist. LEXIS 68935, *21-*22 (S.D.N.Y. Apr. 19, 2020); *United States v. Gross*, No. 15-cr-769, 2020 U.S. Dist. LEXIS 65758, at *8-*9 (S.D.N.Y. Apr. 13, 2020). At the same time, the Court notes that both the Defendant's hypertension and diabetes appear to be well-managed through medication and that the Defendant is not on insulin for his diabetes.

While the Court accepts that the heightened risks posed by COVID-19 to the Defendant could, in some circumstances, support compassionate release, this is not that case. The § 3553(a) factors all favor denying release. The Defendant argues that his prison disciplinary record and personal characteristics support release. *See* 18 U.S.C. § 3553(a)(1). As to his prison record, the Government notes that he has been disciplined for possession and use of a phone. And his personal characteristics and history cut both ways. While the Defendant has strong family relationships and had legitimate income from employment, he nevertheless decided to join a significant drug trafficking operation. This suggests that requiring the Defendant to serve the remainder of his sentence is necessary to "afford adequate deterrence" in this case. *Id.* § 3553(a)(2)(B). The need for deterrence here is reinforced by the fact that the Defendant

4

continued to engage in drug trafficking even after the Government raided his drug trafficking operation.

The Court also concludes that denying compassionate release is necessary "to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense." *Id.* § 3553(a)(2)(A). As Judge Sweet noted, the Defendant played a significant role in trafficking a very large amount of cocaine in a relatively short period of time. And he has served only roughly half of his sentence. *See United States v. Martinez*, No. 12-cr-862, 2020 U.S. Dist. LEXIS 76367, at *9 (S.D.N.Y. Apr. 28, 2020); *United States v. Butler*, No. 18-cr-834, 2020 U.S. Dist. LEXIS 61021, at *7 (S.D.N.Y. Apr. 7, 2020). Moreover, that sentence represents a lenient punishment given the Defendant's conduct. Judge Sweet sentenced the Defendant to the low end of the applicable Guidelines range. And as noted above, the Defendant appears to have benefitted from fortuitously timed amendments to the Sentencing Guidelines that went into effect between when he entered his plea and when he was sentenced. At sentencing, the Government represented that had the Guidelines been amended at the time of the Defendant's plea, the Government would not have offered a base offense level below 38, meaning that the Defendant's Guidelines sentencing range likely would have been higher. On balance, the relevant factors weigh against compassionate release.

### III. CONCLUSION

For the reasons articulated above, the Defendant's motion for compassionate release is denied. The Clerk of Court is respectfully directed to mail a copy of this Memorandum and Order to the Defendant.

This resolves Dkt. No. 439.

SO ORDERED.

Dated: June  5 , 2020
       New York, New York

_____
ALISON J. NATHAN
United States District Judge

6