UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED:  10/14/2020
```

United States of America,

        –v–

Eric Fernandez,

                Defendant.

12-cr-844-9 (AJN)

OPINION & ORDER

ALISON J. NATHAN, District Judge:

    This Court previously denied Eric Fernandez's pro se motion for compassionate release pursuant to 18 U.S.C. § 3582(c).  Mr. Fernandez now renews his motion for compassionate release through counsel citing the increased incidence of COVID-19 at the facility where he is incarcerated.  For the reasons that follow, the Court GRANTS Mr. Fernandez's renewed motion for compassionate release.

I.    **Background**

    A.    **Underlying Offenses and Incarceration**

    In March 2014, Mr. Fernandez pled guilty to a single count of conspiracy to distribute 5 kilograms or more of cocaine for his role in a conspiracy to traffic cocaine from Puerto Rico to New Jersey.  *United States v. Fernandez*, No. 12-cr-844-9 (AJN), 2020 WL 3034799, at *1 (S.D.N.Y. June 5, 2020).  Mr. Fernandez and the Government stipulated that he was responsible for over 150 kilograms of cocaine for purposes of his Sentencing Guidelines calculation.  *Id.* Although this quantity would have resulted in a base offense level 38 at the time of the plea agreement, the base offense level was lowered to 36 by the time of sentencing.  *Id.* Judge Sweet

sentenced Mr. Fernandez to 135 months' imprisonment, the bottom of the Guidelines range.  *Id.*

Mr. Fernandez is currently incarcerated at FCI Fort Dix, with a projected release date in October 2024.  *See* Fernandez Br., Dkt. No. 458, at 26; Gov. Br., Dkt. No. 462, at 4.  He is fifty-one years old and suffers from hypertension and diabetes.  Fernandez Br., Ex. A.  The Bureau of Prisons website reports five current COVID-19 cases among inmates FCI Fort Dix and over thirty past cases.  Federal Bureau of Prisons, COVID-19, https://www.bop.gov/coronavirus/ (last visited Oct. 12, 2020).

### B.    Procedural History

Mr. Fernandez made an administrative request for compassionate release to the warden of FCI Fort Dix on April 13, 2020.  *Fernandez*, 2020 WL 3034799, at *2; Fernandez Br., Ex. A. The warden denied the request on May 15, 2020, reasoning that because Fernandez's hypertension and diabetes were controlled with medication, he was not considered at high risk for serious illness from COVID-19.  Fernandez Br., Ex. A.  He then filed a motion for compassionate release with this Court.  The Court denied his motion.  Although the Court acknowledged that Mr. Fernandez's medical conditions could constitute an extraordinary and compelling reason supporting compassionate release in light of the COVID-19 pandemic, it concluded that the balance of the factors in 18 U.S.C. § 3553(a) did not favor release. *Fernandez*, 2020 WL 3034799, at *2–*3. At the time, the BOP had not reported a single COVID-19 case at FCI Fort Dix.  *See* Gov. Opp. to Pro Se Motion, Dkt. No. 443, at 6.

Following its order on Mr. Fernandez's pro se motion, the Court appointed counsel to determine if there was any basis for seeking reconsideration of the order.  Dkt. No. 447. Through counsel, Mr. Fernandez filed a renewed motion for compassionate release.  *See* Dkt.

No. 458.  The Government again opposed the motion.  *See* Dkt. No. 462.

## II.    Discussion

The compassionate release statute provides a limited exception to the rule that "[f]ederal courts are forbidden,  as a general matter, to 'modify a term of imprisonment once it has been imposed,'" *Freeman v. United States*, 564 U.S. 522, 526 (2011) (quoting 18 U.S.C. § 3582(c)). It allows a court to "reduce" a term of imprisonment, after considering the factors set forth in 18 U.S.C. § 3553(a), if "it finds that . . . extraordinary and compelling reasons warrant such a reduction . . . and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission."  18 U.S.C. § 3582(c)(1)(A)(i).

The First Step Act of 2018, 132 Stat. 5194, 5239, authorizes a defendant serving their sentence to move the Court for compassionate release after they have exhausted their administrative remedies or thirty days have lapsed from the receipt of a compassionate release request by the warden.  *United States v. Scparta*, No. 18-cr-578 (AJN), 2020 WL 1910481, at *4 (S.D.N.Y. Apr. 20, 2020).  "Chief among the[] changes [made by the First Step Act] was the removal of the BOP as the sole arbiter of compassionate release motions."  *United States v. Brooker*, No. 19-3218-CR, 2020 WL 5739712, at *4 (2d Cir. Sept. 25, 2020).  The First Step Act grants district courts "broad" discretion to consider "the full slate of extraordinary and compelling reasons that an imprisoned person might bring before them in motions for compassionate release."  *Id.* at *8–*9.

Although the Government contested exhaustion in its opposition to Mr. Fernandez's pro se motion, the Government does not do so now.  This Court has previously held that the exhaustion requirement in § 3582(c)(1)(A) is a "claim-processing rule" that is "subject to

equitable considerations" including waiver and forfeiture.  *Scparta*, 2020 WL 1910481, at \*5

(quoting *Paese v. Hartford Life & Acc. Ins. Co.*, 449 F.3d 435, 443 (2d Cir. 2006)); *see also Fort*

*Bend County v. Davis*, 139 S. Ct. 1843, 1849 (2019) (holding that even objections based on

mandatory claim-processing rules "may be forfeited 'if the party asserting the rule waits too long

to raise the point'" (quoting *Eberhart v. United States*, 546 U.S. 12, 15 (2005) (per curiam))).

Moreover, even absent waiver, the Court would conclude that Mr. Fernandez satisfied the

exhaustion requirement because more than thirty days had lapsed between his administrative

request for compassionate release and the filing of his motion in this Court.  *See* Fernandez Br,

Ex. A.

 To grant compassionate release under 18 U.S.C. § 3582(c)(1)(A)(i), the Court must

consider the factors set forth in 18 U.S.C. § 3553(a) and find that "extraordinary and compelling

reasons warrant" a reduction in sentence and that release would be consistent with any applicable

policy statements issued by the Sentencing Commission.  The Court finds that these criteria are

met.

 The Court begins by considering whether "extraordinary and compelling reasons warrant

such a reduction [in sentence] . . . and that such a reduction is consistent with applicable policy

statements issued by the Sentencing Commission."  18 U.S.C. § 3582(c)(1)(A).  In *Brooker*, the

Second Circuit held that the current version of U.S.S.G. § 1B1.13 does not apply to

compassionate release motions other than those made on behalf of a prisoner by the BOP.  *See*

*Brooker*, 2020 WL 5739712, at \*6.  As a result, "[n]either Application Note 1(D), nor anything

else in the now-outdated version of Guideline § 1B1.13, limits the district court's discretion" in

deciding a compassionate release motion brought directly by a prisoner.  *Id.* at \*7.  The Court

therefore looks to § 1B1.13 for guidance in the exercise of its discretion, but is free to consider "the full slate of extraordinary and compelling reasons that an imprisoned person might bring before them in motions for compassionate release." *Id.* Section 1B1.13, outlines several circumstances that constitute "extraordinary and compelling reasons" supporting a sentence reduction, including where the defendant is "suffering from a serious physical or medical condition . . . that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover." U.S.S.G. § 1B1.13(1)(A) & cmt. n.1(A).  The policy statement deems a prisoner's circumstances extraordinary and compelling only if the prisoner does not pose "a danger to the safety of any other person or to the community."  U.S.S.G. § 1B1.13(2).

As this Court has explained, the COVID-19 pandemic presents an extraordinary and unprecedented threat to incarcerated individuals.  *See, e.g.*, *United States v. Williams-Bethea*, No. 18-cr-78 (AJN), 2020 WL 2848098, at *4 (S.D.N.Y. June 2, 2020); *Scparta*, 2020 WL 1910481, at *9; *United States v. Stephens*, No. 15-cr-95 (AJN), 2020 WL 1295155, at *2 (S.D.N.Y. Mar. 19, 2020); *accord United States v. Nkanga*, No. 18-cr-713 (JMF), 2020 WL 1529535, at *1 (S.D.N.Y. Mar. 31, 2020) ("The country faces unprecedented challenges from the novel Coronavirus ('COVID-19') pandemic.  Those detained in jails and prisons face particularly grave danger.").  This Court has previously found that even where a facility has not yet reported any confirmed COVID-19 cases, carceral conditions pose unique risks to vulnerable inmates because of the potential for the rapid introduction and spread of the disease.  *See Williams-Bethea*, 2020 WL 2848098, at *5.

When this Court ruled on Fernandez's pro se motion in early June, the BOP reported no

COVID-19 infections among inmates or staff at Fort Dix.  The situation now is far different.  *See* Federal Bureau of Prisons, COVID-19, https://www.bop.gov/coronavirus/ (last visited Oct. 12, 2020). As of October 12, 2020, the BOP website reports that 5 inmates at Fort Dix are infected and 35 inmates have recovered from past infections.  The reported number of infections is significant.  However, the Court also has concerns that the reported numbers on the BOP website may not reflect the true scope of the outbreak at FCI Fort Dix.  While the BOP website reports only 40 inmate cases (5 current and 35 recovered), it also reports that 106 inmates have tested positive at the facility.  *Id.*  Moreover, in a filing in another case in this district, the Government represented that there were 7 current COVID-19 cases among inmates at FCI Fort Dix on the same day the BOP website reported only 3 cases.  *See* Fernandez First Supp. Reply, Dkt. No. 465, at 2; *United States v. Lizardi*, 11-cr-1032, Dkt. No. 2520, at 4.  Whatever the exact number of current cases at FCI Fort Dix, it marks a worrying uptick.  The number of positive tests reported on the BOP website increased from 79 to 106 within the past few weeks.  *See* Fernandez Second Supp. Reply, Dkt. No. 467, at 1, 8.  At the same time, the number of active cases is also increasing.  *See* Fernandez First Supp. Reply at 1; Federal Bureau of Prisons, COVID-19, https://www.bop.gov/coronavirus/ (last visited Oct. 12, 2020).

Mr. Fernandez is at heightened risk for severe illness from COVID-19.  He is fifty-one years old.  He suffers from hypertension and diabetes—two conditions that the CDC has recognized as known or likely to result in increased risk of severe illness from COVID-19. Fernandez Br., Ex. A; Centers for Disease Control and Prevention, Certain Medical Conditions and Risk for Severe COVID-19 Illness (Aug. 14, 2020), https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html.  Considering Mr.

Fernandez's age and underlying medical conditions, the Court finds that the COVID-19 pandemic amounts to an extraordinary and compelling circumstance in his case.  The Government disputed that Mr. Fernandez could establish extraordinary and compelling reasons for release in its opposition to his pro se motion, but it now concedes that he has done so.  *See* Gov. Br. at 6.

The Court next considers the factors set forth in 18 U.S.C. § 3553(a).  As the Court noted in its order on Mr. Fernandez's pro se motion, there is a significant need to afford adequate deterrence in this case and to reflect the seriousness of the offense.  *Fernandez*, 2020 WL 3034799, at *2–*3.  Mr. Fernandez chose to involve himself in a drug trafficking conspiracy despite his strong family relationships and legitimate income from employment, and he continued to participate in the conspiracy even after the Government raided the operation.  *See id.*  However, Mr. Fernandez's counseled motion highlights several factors weighing in favor of release that were absent from his pro se motion.  Mr. Fernandez had no prior criminal history and his offense conduct did not involve violence.  He has maintained a good record in prison, where he has only a single disciplinary infraction for unauthorized possession of a cell phone and has completed numerous educational courses.  *See* Fernandez Br., Ex. A; Gov Br. at 7; *see also* Fernandez Br. at 29–30.  He presented character references at his sentencing before Judge Sweet reflecting that he is "a hard-working and caring individual" who maintained lawful employment prior to his incarceration, including running his own business.  *See* Fernandez Br. at 28 (quoting Sentencing Opinion, Dkt. No. 252, at 10).  The Court also now finds that he would not pose any danger to the safety of others or to the community were he to be released, considering his age, the nonviolent nature of his offense conduct, and his history of lawful employment.

Although the Court determined that the § 3553(a) factors did not favor release when it ruled on Mr. Fernandez's pro se order in early June, its analysis is different under current circumstances and in light of the additional evidence highlighted in his counseled motion.  In particular, the worsening COVID-19 outbreak at FCI Fort Dix poses a significant risk of serious illness considering Mr. Fernandez's medical conditions.  Mr. Fernandez has already served over half of his effective sentence.  The time he has served has already achieved much of the original sentence's purpose.  And, after four additional months of incarceration, Mr. Fernandez has continued to keep a clean disciplinary record in prison.  Due to the COVID-19 pandemic, the "history and characteristics of the defendant," and the "need . . . to provide the defendant with needed . . . medical care," § 3553(a), now weigh in favor of Mr. Fernandez's release, given the health risk that continued incarceration poses to him.  The Court has reconsidered the § 3553(a) factors, and concludes that they entitle Mr. Fernandez to compassionate release.

Mr. Fernandez has established extraordinary and compelling circumstances supporting compassionate release.  After considering the factors set forth in 18 U.S.C. § 3553(a), the Court will exercise its discretion to reduce his sentence.

III.   **Conclusion**

For the foregoing reasons, the Court GRANTS Mr. Fernandez's motion for compassionate release.  The Court resentences Mr. Fernandez to time served plus five years of supervised release under the conditions in the original judgment.  The mandatory conditions, standard conditions, and special conditions of supervised release from Mr. Fernandez's original sentence are hereby imposed.  The Court also imposes an additional condition of supervised release: Mr. Fernandez is ordered to serve twelve months of the remaining portion of his original

term of imprisonment under home detention.

The Government is ORDERED to release Mr. Fernandez (BOP Reg. No. 41288-069) from custody immediately.  It is FURTHER ORDERED that the parties shall meet and confer and submit a proposed order governing the conditions of the Mr. Fernandez's release, including his period of fourteen days of self-isolation, no later than October 15, 2020.

SO ORDERED.


Dated: October 14, 2020
       New York, New York                    _____
                                                      ALISON J. NATHAN
                                                   United States District Judge

9